HALIL HASIC (SBN: 245251)
Marc J. Gedeon, APLC
633 West 5th St., 26th Floor
Los Angeles, CA 90071
Phone: (424) 240-9272
Fax: (213)-600-7852
Email: halil@gedeonlawcpa.com

Attorneys for Plaintiff
ALEX MISCIONE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MISCIONE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CARDONE TRAINING TECHNOLOGIES, INC., a Nevada Corporation; DOES 1-10,<br><br>Defendant(s) | Case No.: 8:20-cv-848<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.<br><br>DEMAND FOR JURY TRIAL |

///

///

///

///

///

COMPLAINT

1. COMES NOW, the Plaintiff, Alex Miscione ("Plaintiff"), by and through undersigned counsel, and brings this action against the Defendant, Cardone Training Technologies, Inc., ("Defendant"), and as grounds thereof alleges as follows:

## NATURE OF THE ACTION

2. This action is brought by a consumer for Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C § 227, et seq. ("TCPA").

3. This case arises from unauthorized text messages that Defendant and/or Defendant's agents and representatives sent to Plaintiff's cellular telephone without Plaintiff's prior express written consent and after Plaintiff expressly requested that Defendant stop sending unsolicited text messages to Plaintiff's cellular telephone.

4. Starting on or about October 22, 2018 and through November 14, 2019, Defendant and/or its agents and representatives sent at least twenty-five (25) unsolicited and unauthorized text messages to Plaintiff's cellular telephone in violation of the TCPA.

5. Through the unlawful conduct alleged herein, Defendant caused Plaintiff injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiff seeks injunctive relief, statutory damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

7. This court has jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 as Plaintiff alleges violations of a federal statute. Federal courts have jurisdiction over private suits arising under the TCPA. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue in this District is proper because Plaintiff resides here and Defendant does business in and places phone calls into this District.

COMPLAINT

# PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Orange County, California.

10. Defendant is a Nevada corporation whose principal office is located at 18909 NE 29th Avenue, Aventura, Florida 33180. Defendant directs, markets, and provides its business activities throughout the State of California.

11. At all times relevant to this Complaint, Defendant and/or its agents and representatives have used, controlled, and/or operated "automatic telephone dialing systems" ("ATDS") as defined by the TCPA. 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

12. At all times relevant to this Complaint, Plaintiff, was and is a natural person, and is a person with standing to bring a claim under the TCPA by virtue of being directly affected by violations of the Act.

13. The true names and capacities of defendants DOES 1-10, inclusive, are unknown to Plaintiff, who sues these unidentified individuals and entities by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that defendants DOES 1-10, inclusive, were responsible for, participated in, or contributed to the matters about which Plaintiff complains, and are legally responsibility for the alleged harms. Plaintiff will seek leave of court to amend his Complaint to substitute the true names and capacities of these fictitiously-named defendants when the same are ascertained.

14. At certain times hereinafter alleged, defendants DOES 1-10, and each of them, were acting as the agents and employees of their co-defendants, and in doing the acts hereinafter alleged, were acting within the course and scope of such agency or employment, with the full knowledge, actual or constructive, permission and consent of their co-defendants, and each of them, such that legal responsibility for any and all harm caused by such alleged acts is imputed to all defendants and co-defendants.

///

15. At other times hereinafter alleged, defendants DOES 1-10, and each of them, were acting independently and maliciously, outside of the course and scope of their regular agency or employment.

## THE TCPA

16. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

17. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

19. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "**prior express written consent**" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations*

///

*Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call ***or message*** for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) (emphasis provided). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id. citing Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

///

25. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***).

26. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) *quoting Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis in original).

## **FACTS**

27. Upon information and belief, beginning on or about October 22, 2018 and continuing through November 2019, Defendant, by and through its agents, representatives, and/or employees acting within the scope of Defendant's authority, sent at least twenty-five (25) text messages using ATDS to Plaintiff's cellular telephone: XXX-XXX-0867 ("Plaintiff's Mobile Number").

28. Plaintiff is the sole owner, subscriber, possessor and user of Plaintiff's Mobile Number.

29. At all times relevant hereto, Plaintiff's Mobile Number was registered on the national do-not-call registry.

///
///
///

30. Screenshots of some of the above referenced text messages are provided below:




31. Defendant's text messages were transmitted to Plaintiff's Mobile Number and within the time frame relevant to this action.

32. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff marketing advice and training.

33. The information contained in the text messages advertises Defendant's promotions such as "50% off 10X Growth Conference Las Vegas Tickets." which Defendant sends to promote its business.

34. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

35. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS.

36. To the extent Defendant did obtain Plaintiff's express written consent, Plaintiff did revoke such consent on several occasions.

37. On or about November 11, 2018, Plaintiff's counsel mailed a letter to Defendant specifically requesting that Defendant immediately cease and desist sending further text messages to Plaintiff's Mobile Number.

38. Plaintiff's letter constituted an opt-out request, which Defendant was obligated to honor within thirty (30) days of receipt. *See* 47 C.F.R. §64.1200(d)(3).

39. On November 30, 2018, counsel for Defendant responded to Plaintiff's November 11, 2018 letter acknowledging the receipt of Plaintiff's letter.

40. Nonetheless, Defendant did not honor Plaintiff's opt-out request and continued to send text messages to Plaintiff's Mobile Number. Plaintiff received at least twenty-three (23) promotional text messages from Defendant.

41. In December 2018, Plaintiff's counsel sent another letter to Defendant demanding that Defendant cease and desist from sending further text messages to Plaintiff's Mobile Number.

42. Defendant ignored the second letter from Plaintiff's counsel and continued to send promotional text messages to Plaintiff.

43. On May 30, 2019, Plaintiff received another promotional text message from Defendant.

44. On the same day, Plaintiff responded to the message with the word "Stop" in an attempt to opt-out of any further text message communications with Defendant.

45. After Plaintiff texted stop to Defendant, Defendant responded by stating that Plaintiff has, "successfully unsubscribed and will receive no more messages."

///
///
///
///

46. Below is a screenshot of Defendant's May 30, 2019 message, Plaintiff's opt-out, and Defendant's confirmation of Plaintiff's opt-out:



47. Despite Plaintiff's opt-out request, Defendant's receipt of the opt-out request, and Defendant's express acknowledgement of Plaintiff's opt-out request, Defendant sent Plaintiff nine (9) more text messages on the following dates: 8/30/19, 9/16/19, 10/4/19, 10/11/19, 10/15/19, 10/18/2019, 10/24/19, 10/26/2019 and 11/14/19.

48. The text messages that Defendant and/or its agents or representatives sent to Plaintiff's Mobile Number originated from telephone numbers 43786, 96167, 27367, and 81787, all numbers which upon information and belief are owned and operated by Defendant and/or Defendant's agents or representatives.

49. The numbers used are known as a "short code," a standard 5-digit code that enables senders to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

50. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

51. Specifically, Plaintiff estimates that he has wasted ten seconds per text reviewing all of Defendant's unwanted messages.  Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

52. Further, Defendant hounded Plaintiff with persistent messages, including early in the morning and late at night, on weekends and during the week.  Plaintiff was at home when he received many of these messages, which resulted in an audible sound and the disturbance of the domestic peace of Plaintiff's home.  Plaintiff also received messages from Defendant while he was working, in meetings, and during meals.  For example, Plaintiff's work meetings were often interrupted by Defendant's text messages.

///

53. Additionally, Plaintiff estimates that he wasted approximately 45 minutes researching Defendant and the source of the messages on the Internet, and attempting to determine how Defendant obtained his telephone number.

54. Upon information and belief, Defendant knew its calling techniques were in violation of the TCPA, yet still continued to use them therefore willfully or knowingly violated the TCPA.

## COUNT I
### (Violations of the TCPA, 47 U.S.C. § 227(b))

55. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

56. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

57. Defendant and/or its agents or representatives used equipment having the capacity to send text messages without human intervention to send unsolicited and unauthorized text messages to Plaintiff's Mobile Number.

58. These text messages were sent without regard to whether or not Defendant had first obtained express written consent from Plaintiff. In fact, Defendant did not have prior express consent to send the text messages to Plaintiff's Mobile Number as prior express consent was either never obtained or was revoked.

59. Defendant, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using ATDS to send unsolicited and unauthorized text messages to Plaintiff's Mobile Number without Plaintiff's prior express written consent.

60. Defendant knew that it did not have prior express consent to send the text messages and knew or should have known that it was using equipment that constituted ATDS. Therefore, Defendant's violations of the TCPA were willful or knowing.

61. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future text messages. *Id*.

## COUNT II

**(Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b))**

62. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

63. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

64. Defendant knew that it did not have prior express consent to send the above-referenced text messages to Plaintiff's Mobile Phone and knew or should have known that its conduct was a violation of the TCPA.

65. Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive text messages from Defendant or that Plaintiff had revoked his consent at the time Defendant sent the text messages, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

66. As a result of Defendant's violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III

**(Violation of the TCPA, 47 U.S.C. § 227)**

67. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-

not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

70. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

71. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

72. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations (i.e., text messages) to Plaintiff who registered Plaintiff's Mobile Number on the National Do-Not-Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

73. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call (i.e., text message) in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

74. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

75. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. An award of actual and statutory damages;
2. An order declaring that Defendant's actions, as set out above, violate the TCPA;
3. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;
4. An injunction requiring Defendant to cease all unsolicited text messaging activity;
5. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment; and
6. Such further and other relief as the Court deems necessary.

## **DEMAND FOR JURY TRIAL**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated:  May 4, 2020                MARC J. GEDEON, APLC

By:  /s/ Halil Hasic
HALIL HASIC, Esq.
Attorneys for Plaintiff
ALEX MISCIONE

COMPLAINT